## UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------X

Curtis: Avilez,

        *Plaintiff*

      -versus-

CITY OF NEW YORK, et al.:
Mehmet C. Kanbur, Denisha Balkissoon,
each individually

        *Defendant(s)*

-----------------------------------------------------------X

Index No.

_____, 2025
[Purchase date of index #]

Jury Trial Demanded
Fed. R. Civ. P. 38 (b)

## COMPLAINT

For his Complaint, Plaintiff Curtis: Avilez ("Avilez") states and alleges as follows:

### PARTIES, VENUE, AND  JURISDICTION:

Federal Question - (42 U.S.C. § 1983)

1. This is an action for damages for injuries suffered by Plaintiff Curtis: Avilez caused by Defendant(s) conduct and abuse of authority in violation of Avilez's common law and civil rights under the United States Constitution, New York Constitutional Law Article 1 – Bill of Rights §12 and §7, New York Civil Rights Law §50 and §51

2. Curtis: Avilez, natural living man, a private beneficiary and trustee under ecclesiastical and common law, mailing address is c/o PO BOX 8678, New York City, New York, near [10116- if needed for mailing route only] United States of America (non-incorporated). Email: c.d.avil51@gmail.com

3. Defendant Mehmet C. Kanbur ("Kanbur") is, upon information and belief, a citizen/resident of New York. Kanbur serves as a New York City police officer (Sergeant) at the 67th precinct on October 12, 2024. The 67th Precinct Police Department is an agency of the City of New York location address: 28 Snyder Avenue, Brooklyn NY 11226 (Phone: 718-287-3211). Kanbur acted under color of state law at all material times. He is sued in his individual capacity as well as his official capacity under (*Supervisory liability*).

4. Defendant Denisha Balkissoon ("Balkissoon") is, upon information and belief, a citizen/resident of New York. Balkissoon serves as New York City police officer at the 67th precinct on October 12, 2024. The 67th Precinct Police Department is an agency of the City of New York location address: 28 Snyder Avenue, Brooklyn NY 11226 (Phone: 718-287-3211). Balkissoon acted under color of state law at all material times. She is sued in her individual capacity.

5. Plaintiff brings this action pursuant to 42 U.S.C § 1983 and 1988, the Fourth and Fourteenth Amendments to the United States Constitution, and 28 U.S.C. § 1331 and 1343. These statutory and constitutional provisions confer original jurisdiction of this Court over this matter

## FACTUAL ALLEGATIONS

1. On or about October 12, around 8:22pm 2024, Plaintiff and family were peacefully traveling in his private automobile on a public roadway in Kings County, Brooklyn (traveling on avenue D towards New York Avenue) Stopped at red with only one car in front of Plaintiff, light turned green and the car in front did not move.

2. Plaintiff waited a bit, notice the car not moving so plaintiff took the liberty safely to go around the car impeding traffic. Plaintiff cleared the car and kept along his way until he reached New Yok Avenue, made a right on the corner when officer (Sergeant) Mehmet Kanbur

(hereinafter "Kanbur") of the 67th precinct, *emergency lights flashing*, pulled up alongside plaintiff as he was parking on the immediate corner came out his SUV and without any warrant or articulable cause. The Officer immediately demanded that Plaintiff produce State-issued identification and a driver's license[1], threatening Plaintiff with arrest if he did not "provide" to the Officer his personal identification (*A blatant 4th amendment violation, protections from unreasonable searches or seizures and right to privacy. Asking for my name and running it through police database without probable cause and warrant is a "search" under the 4th amendment* ).

3.      Plaintiff had not committed any crime, or harm to any person or property; there were no victims, no breach of the peace, and no warrant signed by a judge or *verified criminal complaint* by an injured party to his knowledge and at this point has "**reasonable expectation of privacy**" which Plaintiff was standing to defend. The stop and demand were premised solely on an alleged regulatory violation (*crossing a double yellow line* to go around an idol car blocking traffic at a green light), absent any probable cause or reasonable suspicion of a cognizable crime.

4.      Even though the double yellow line would be considered a *traffic control devise* which all "licensed" (not non-licensed travelers) drivers are subject to which are based on statutes, there are exceptions to the general prohibition of crossing the double yellow line when applicable. *You can cross them to turn left into a driveway, private road, and to make a U-turn. Additionally, New York generally permits crossing a double yellow line* if it's done safely *(examples: to avoid an accident, pedestrian, cyclist, **obstruction in roadway** or other human-powered device) which applies in this case here as an idling car in the roadway can be considered an **obstruction***.

---

[1] *1Delaware v. Prouse*, 440 U.S. 648, 654-55 (1979) (holding that police may not randomly stop vehicles to check driver's licenses or registration absent specific reasonable suspicion of a violation)

5.     Plaintiff a (non-licensee (see footnote 14)) takes great care in the safety of himself, his

property and the safety of others when traveling on the roadways privately. This is also

expressed in the Supreme Court case: *Hale v Henkel, 201 U.S. 43 (1906) "the individual may*

*stand upon his constitutional rights as a citizen. He is entitled to carry his private business in his*

*own way"[2]*.

6.     The unacceptable conduct by Mr. Kanbur violated Plaintiff's constitutional and civil right

to be free from unreasonable seizures and to the liberty of movement. It is well established that a

stop of a vehicle constitutes a seizure under the Fourth Amendment, and such a seizure is

unlawful if not supported by at least reasonable suspicion of a **law** violation (statutes are <u>not</u> law

as clearly supported by Supreme Court precedent).[3] During defendants' investigative stop,

defendants also did not question & establish if Plaintiff falls under their jurisdiction as a

"licensed" driver, <u>operating in a *commercial capacity*</u>.

7.     Plaintiff vehemently yet respectfully stood his ground to insist on the nature and cause of

the stop and if no crime was committed (challenging the officer's jurisdiction), Plaintiff has the

absolute right to remain private and not give up his right to privacy as supported by the 4th

amendment of the U.S. Constitution & New York State Constitution Article 1, Section 12.

8.     The Officer's (Kanbur) threat to arrest Plaintiff solely for failure to produce a State

license or ID on the presumption of a violation of an unconstitutional statute[4], in the absence of

probable cause or a *verified criminal complaint*, is abuse of authority, further violates Plaintiff's

---

[2] "Government may not prohibit or control the conduct of a person for reasons that infringe upon constitutionally guaranteed Freedoms" *Smith v. U.S. 502 F 2d 512 Tex (1974)*

[3] *Terry v. Ohio*, 392 U.S. l. 21 (1968) (an investigative stop is permissible only when the officer has reasonable suspicion that the person has committed, or is about to commit, a crime). See also Wash. Const. art. l. §7 (protecting privacy and ordering that no person shall be disturbed in his private affairs without authority of law).

[4] The general misconception is that any **"statute"** passed by legislators is bearing the appearance of law (color of law) constitutes law of the land. The U.S. Constitution is the supreme law of the land, and any <u>"statute"</u> to be "valid" must agree. It is impossible for a law which violates the Constitution to be valid. This succinctly stated as follows: "All law which are repugnant to the constitution are null and void" *Marbury V. Madison 5 U.S. 137, 174, 176*

fundamental "right to travel freely upon the public highways," a right long recognized under the common law and inherent in the rights to liberty and the pursuit of happiness.[5]

9.      Requiring a license (a form of government permission) to exercise a common right is constitutionally problematic: Murdock v. Pennsylvania, 319 U.S: 105, 113 (1943) ("A state may not impose a charge for the enjoyment of a right granted by the federal constitution."). Thus, an unconstitutional licensing law purporting to convert a right into a privilege can be treated as null and void; one need not submit to it.

10.     Shuttlesworth v. Birmingham. 394 U.S. 147, 151 (1969) (when faced with "an unconstitutional licensing law," a citizen "may ignore it and engage with impunity in the exercise of the right... for which the law purports to require a license"). By demanding proof of a State-granted status and credentials as a precondition to not being arrested, the Officer, acting under the "solicitation of color of law", infringed Plaintiff's First Amendment right to freely travel and Fourth Amendment right to be secure in his person.

11.     Kanbur's coercive threat ("present ID or go to jail") constitutes an unlawful act of intimidation and attempted extortion of rights, actionable as the common law tort of coercion and as a potential criminal offense under New York law. (New York Penal Law § 135.65)

## A. Plaintiff's Identification and Unlawful Arrest (False Imprisonment).

---

[5] *Thompson v. Smith*, 155 Va. 367, 154 S.E. 579, 583 (1930) (acknowledging that "the right of a citizen to travel upon the public highways and to transport his property thereon in the ordinary course of life and business is a common right," which cannot be arbitrarily deprived, though it may he reasonably regulated under the police power), see also Chicago Motor Coach Co. k. City of Chicago, 337 Ill. 200, 169 NJE. 22, 25 (1929) (using public highways is a common right).

12.     In response to the Officer's threat[6], Avilez, under duress, continued to ask Kanbur what crime was committed which Kanbur (a Sergeant) still did not articulate (outside of me crossing a double yellow line, *a statute to which I am not contracted to*) which had been explained to him that Avilez was going around a car which was idol at a green light, at which he safely cleared the car and proceeded onto his destination home.

13.     This is also an action which I am sure he saw for himself as he was coming in the opposite direction. Since it was well within Avilez's right to challenge Kanbur's lack of jurisdiction by asking "if there was a crime committed, a warrant out for my arrest, *verified criminal complaint* or if he even had probable cause to even stop and impede my free right to travel".

14.     Again, Kanbur did not articulate any committed crime or *verified criminal complaint* (which is evidenced in his body cam footage and my recorded video). Plaintiff did not present a New York State driver's license (as one such contract does not exist), as Avilez was not engaged in commercial activity and does not concede the necessity of such license for private travel[7].

15.     Avilez did not present ID[8] void of probable cause of a crime, injured party, disturbance of the peace or warrant issued for his arrest. Kanbur through his frustrations threatened if I don't give him my ID, he will arrest me and take me down to the station to ID me there (unconstitutional). Kanbur proceeded to call his cohorts for backup against a living man standing

---

[6] *NY Penal Law* 135.60 Coercion in the second degree ("A person is guilty of coercion if by use of a threat he or she compels or induces a person to ... refrain from acting in a way that the person has a legal right to do"). Here. Plaintiff had a legal right to remain silent and not produce government documents absent a lawful requirement yet was compelled after unlawful arrest.
[5] Thus, an unconstitutional licensing law purported to convert a right into a privilege can be treated as null and void; one need not submit to it. Shuttlesworth v. Birmingham. 394 U.S. 147, 151 (1969) when faced with an unconstitutional licensing law, a citizen may ignore it and engage with impunity in the exercise of a right"
[8] *Reasonable Expectation of Privacy* is a legal concept that protects individuals from unreasonable government searches and seizures. It means a person has a right to privacy in certain places and with certain items, and that this right should be protected from government intrusion unless a <u>warrant based on probable cause is obtained</u>. This concept is a cornerstone of the Fourth Amendment, which protects against unreasonable searches and seizures. Also see *Olmstead v. U.S. 277 U.S. 438, 478 (1928)*

firm on his rights who was also accompanied by his family (Ms. Curry) and 5-year-old as
witness.

16.     Additionally for the record, Plaintiff had a "No Trespassing / Private Property"[9] sign fully
and clearly displayed inside the cabin of his automobile for Kanbur to see.  Once Kanbur's back
up arrived Kanbur proceeded to trespass (see footnote 17) and put his hands inside Avilez's private
automobile window, unlock and open his automobile door and pull him out the car forcefully.

17.     Together, (Ms. Curry) and Plaintiff yelled out *"That is Assault"* which Kanbur paused for
a split second but continued to direct his subordinate officers to arrest and handcuff Avilez void
of (PC) probable cause or (RS) reasonable suspicion of a crime.

18.     Avilez, now in handcuffs and his liberty unlawfully stolen, was transported against his
*will* to the 67th precinct which his ID and private information was seized. This arrest[10] and
detention were unlawful and constitute the tort of false arrest/false imprisonment, as Kanbur
lacked any valid warrant and lacked probable cause[11] that Plaintiff had committed a crime.7

19.     The U.S. Supreme Court has emphasized that no person may be arrested or seized except
upon <u>probable cause of crime</u> or pursuant to a valid warrant; to do so otherwise <u>violates the
Fourth and Fourteenth Amendments</u>. [12] Plaintiff asserts that the requirement to carry a State

---

[9] *NY Penal Law § 140.05: Trespass,* In New York, it is against the law to enter into another person's property or remain on
another person's property without his consent. In this case Kanbur putting his hands in the private property (automobile) of the
plaintiff constitutes trespass (unauthorized entry) since Kanbur had no jurisdictional authority or consent of the Plaintiff to do so.

[10] "A false arrest occurs when a person with actual or pretended legal authority to arrest unlawfully restrains or imprisons another
person." An arrest without proper legal authority or justification is false imprisonment per se" *Bender v. City of Seattle, 99 Wash.
2d 582, 590 (1983).*

[11] "Whether [an] arrest was constitutionally valid depends in turn upon whether, at the moment the arrest was made, the officers
had probable cause to make it." *Beck v. Ohio, 379 U.S. 89. 91 (1964)* also Detention for investigation without probable cause is
unlawful) *Dunaway v. New York, 442 U.S. 200, 216 (1979).* Here, the Officer's decision to arrest rather than issue a citation or
allow Plaintiff to depart unincumbered exceeded reasonable force and turned a regulatory infraction into a custodial seizure,
raising due process concerns as well.

[12] "The individual ... owes no duty to the State, since he receives nothing therefrom beyond the protection of his life and
property". *Hale v. Henkel, 201 U.S. 43, 74 (1906)*

driver's license is a regulatory revenue measure (a prerequisite tied to driving as a **commercial** privilege) and not lawfully enforceable upon a sovereign individual traveling privately. The lack of any injured party, property damage or "contract" means the State had no jurisdiction over Plaintiff's liberty to private and free conduct on the roadway in his automobile.

## B. Coercive Jail Conditions and Forced Biometric Data Collection (Duress and Violations of Bodily Security).

20.     After arriving at the 67th precinct (Avilez in his understanding) was only going to be unlawfully id then let go), but on the contrary Avilez was subjected to further indignities and rights violations. After obtaining his information void of consent and now under duress and coercion, Plaintiff was jailed[13] (I was and advised I will see a judge (which was not immediately)[14].

21.     No other information was provided to me. Jail staff took Plaintiff sneakers and left bare foot (socks on) in the cell. Plaintiff was exposed to constant cigarette smoking with no ventilation provided in the cell area. All cigarettes were provided to the other men in the cell by the officers themselves.

22.     Avilez does not smoke, and it was torture being exposed and breathing in the toxic carcinogenic air for hours, freely provided by employees of the NYPD of the 67th precinct. Void of consent, which was verbally advised to Officer Denisha Balkissoon, Avilez invoked his right to privacy and refused to surrender his fingerprints and be photographed or allow to be mugshot,

---

[13] Argensinger v. Hamilin, 407 U.S. 25 (1972), is a United States Supreme Court decision which held that the accused cannot be subjected to actual imprisonment unless provided with counsel.

[14] Federal Rules of Criminal Procedure 5(a)(1), which states that a person making an arrest within the United States must take the defendant without necessary delay before a magistrate judge, or before a state or local judicial officer as Rule (5)(c) provides.

as he did not consent to any commercial contracting with the corporate State nor waive his rights against self-incrimination and unreasonable searches of his person (a 4th amendment violation).

23.     In retaliation of Plaintiff's stance, Balkissoon enforced the threatened conditions. Plaintiffs' Biometric property was forcefully taken (under duress), and Plaintiff was returned to the cold cigarette smoke-filled cell for several hours. This calculated use of environmental discomfort and sensory stress weighed heavy on Plaintiff's mental psyche.

24.     The biometric data (fingerprints and photo thus obtained are fruits of coercion and are constitutionally tainted. The Fifth Amendment protects an individual from being compelled to be a witness against himself; while courts distinguish fingerprints as physical evidence not directly covered by the privilege, the manner of extraction here so far exceeded civilized standards that it violates due process.

25.     The jailers' actions constitute an assault and battery upon Plaintiff's person and an outrage (intentional infliction of emotional distress) in tort law, as they intentionally inflicted physical discomfort and emotional distress to coerce compliance. Kanbur and his Cohorts also arguably meet the elements of the crime of coercion under NY Penal Law § 135.60, by the threat through action to continue Plaintiff in unacceptable conditions.

26.     Plaintiff has a legal and lawful right to refuse these abuses made under color of law are actionable under 42 USC § 1983[15] as violations of the Fourteenth Amendment's substantive due process protections. Plaintiffs' eventual submission to fingerprinting being the product of duress,

_____

[15] 42 U.S.C. § 1983 is a federal law that allows individuals to sue state and local government officials for violating their civil rights. Specifically, it provides a cause of action for any person who, acting under color of state law, deprives another of rights, privileges, or immunities secured by the Constitution and laws. **"Under Color of State Law":**
This phrase is crucial. It means the person or entity accused of violating rights must have been exercising power given to them by a state or local government. Deprivation of Rights: The plaintiff (the person suing) must demonstrate that they were deprived of a right protected by the U.S. Constitution or federal law

cannot be construed as consent or waiving any rights and must be expunged as fruits of unlawful coercion. Plaintiff was also taken from 67th precinct jail to Central Booking Jail shackled to 7-8 other men, exposed to inhumane conditions upon arrival at Central Booking Jail in Brooklyn.

27.     Plaintiff was then put in another holding cell this time still shackled in the tiny cell to 7-8 other men, within this same instance Plaintiff saw 3 other men in the cell already waiting to be moved, one laying in his own urine screaming at the top of his lungs to go to a bathroom (there were no urinal or stall in the cell and no officer came to the aid of the man for hours. Plaintiff had to endure the torture of being handcuffed to 7-8 other men for hours and endure the smell of the urine drenched detainee in the same cell, before being moved again to another cell.

28.     Seeing this, had a phycological effect on Plaintiff, as it made Plaintiff refuse the consumption of water or any form of food which may have been offered later for fear the same fate may apply to him which would lead to further degradation of his dignity. Few hours later Plaintiff still shackled to other men was moved to another area and was lined up to be fingerprinted and photographed yet again and put into another cell which officers claimed I was going to see a judge (which did not happen). (Federal Rule of Criminal Procedure Rule 5. Initial Appearance (1) Appearance upon arrest. (A) A person making an arrest within the United States must take the defendant **without unnecessary delay** before a magistrate judge, or state or local judicial officer as Rule 5(c) provides, unless statute provide otherwise. NY state equivalent is NYCPL § 180.10) Plaintiff was not awarded the right to see a judge *without delay* as he was held against his will for about 24hrs.

## C. Arraignment Before a Biased Magistrate and Unauthorized Plea Entry.

29.     On October 13, 2024 (the next day around 8:30 pm) after the unlawful booking, Plaintiff was brought before a magistrate at Kings County Criminal Court for an initial appearance/

arrangement, in the case captioned *THE PEOPLE OF THE STATE OF NEW YORK (Plaintiff)* vs *CURTIS AVILEZ (Defendant)*.

30.    An Hour before entering the court and almost 23 hours enduring the torture of Plaintiff's freedom stolen, environmental displeasure, sleep deprived and feeling hunger pains from not eating in over 36 hours (Avilez only eats once a day) Plaintiff was told he would be appointed to public defender (which was ineffective in building a proper defense).

31.    Plaintiff did not have the opportunity to explain the situation on the infringement upon rights and the violations of Constitutional law by Kanbur and his cohorts. Plaintiff did not even get to see or review what trumped up charges was applied against him to build a proper defense.

32.    The public defender stated she will get Plaintiff out and he will just pay a very small fine (that was the max of our dialog). The experience felt like a conveyer belt at a meat facility given that I noticed each Man accused of an offense in the jailing system only spent under 2 minutes with a "public defender" as was Plaintiffs first-hand experience.

33.    The People of the state of New York (a legal entity) cannot be an injured party. Its statutes or the violation thereof of any of its statutes is not a crime and is not law as clearly mentioned by the Supreme Court (see Self v Rhay, 61 Wn (2d) also see Rodrigues v Ray Donavan (US Department of Labor 769 F.2d 1344, 1348 (1985).

34.    Already feeling the effect of *Sleep Deprivation* and my experience of the 24hour unlawful detainment, thru coercion and for want of just going home, Plaintiff unconsciously followed the Public Defender's directions to agree and pay the fine. At this point of his experience Plaintiff was not in his right mental state of mind therefore anything said under this duress cannot be construed as free will consent to plea guilty or not , agree to contract with the jailers and bias judge void of a *verified criminal complaint*.

## LEGAL CLAIMS AND CAUSES OF ACTION

## Lack of Personal, Territorial and Subject Matter Jurisdiction

35.      It is automatic that a court must have both subject matter jurisdiction over the type of

case and personal jurisdiction over the parties. Here the Kings County Criminal Court lacks both

with respect to Plaintiff). *"The People of the State of New York"*, must provide proof the City or

State has territorial or extraterritorial jurisdiction over the physical, geographical location where

defendants injured Plaintiff, infringed upon his common law right (protected under the Constitution)

to go about his way unencumbered (location of arrest). [16]

36.      *Subject Matter Jurisdiction:* The charges against Plaintiff as a private man traveling with

his family and allegedly failing to provide an ID (License or otherwise) void of (PC) or (RAS) and

allegedly obstructing an officer by asserting his right to privacy, do not constitute actual crimes

cognizable in a constitutional court of law. There is no injured party, no corpus delicti and thus no

true "case or controversy" for a court of record to adjudicate. The only "party" claiming injury is

*"The People of the State of New York"*, an abstract entity that suffered no tangible harm.

37.      Courts have held that regulatory offenses cannot be enforced in a manner that violates

fundamental rights or treat the people as enemies. Additionally, as Plaintiff has declared he has not

participated in any licensing or regulated activity in commerce on the highway.

---

[16] "It is a general rule that an officer, executive, administrative, quasi-judicial, ministerial, or otherwise, who acts outside the scope of his jurisdiction and without authorization of law (positive) may thereby render himself amenable to personal liability in a civil suit." Cooper v O'Conner, 69 App DC 100, 99 F (2d)

38.     Nor does the *"The People of the State of New York"*, have proof of such contract based on License[17] or Registration (which a charge against Plaintiff was "suspended license") The Kings County Criminal Court does not have any arguable statutory jurisdiction because the motor vehicle code's application was negated by fact *"The People of the State of New York"(entity)*, has not demonstrated that the legislature's enactment were intended to abrogate the common law right to travel for noncommercial purposes, and even if they were such statements would be unconstitutional as applied.[18]

39.     Without a valid lawfully charged offense (since the license requirement is inapplicable and/or unconstitutional in this context, and "obstruction" (failure to id) cannot be premised on exercised rights, the courts has no subject matter to adjudicate.

40.     *Personal Jurisdiction*: Avilez never consented to the court's jurisdiction freely, void of threat, duress, coercion and kidnapping by defendants. Personal Jurisdiction over a flesh and blood man requires either consent, presence within the court's territorial jurisdiction for a valid cause, or status as a 14th Amendment "person" subject to statutes, Plaintiff stands as one of the People only accountable under common law for actual harms caused. *"The People of the State of New York" (an entity)*, has provided no evidence of jurisdiction on the record (a valid License or registration or territorial jurisdiction)

41.     Without personal jurisdiction, all orders of the court "Kings County Central Court" (arraignment, plea entry made under duress, release conditions, bench warrant etc.) are void. A void

---

[17] The definition of a Licensee is one who holds a current valid license. **Only a licensee can violate statute.** A suspended license is not valid and therefore <u>a suspended license is not subject to statutes associated with that license</u>. Also see Collier v. Wallis, 180 U.S. 452 (1901) 333 US 426 "The Acceptance of a license, in whatever form, will not impose upon the licensee an obligation to respect of to comply with any provision of the statute or with the regulations prescribed that are repugnant to the Constitution of the United States."
[18] All laws repugnant to the Constitution are Null and Void" Marbury v. Madison

order has no legal force and can be attacked at any time.[19] The proper remedy is immediate dismissal of the original action ab initio for lack of jurisdiction.

42.　　　Additionally, the concept of distinct legal entry must be addressed. The case caption lists "CURTIS AVILEZ" as Defendant, which is not Plaintiff's name as a matter of proper English (Plaintiff writes his name as Curtis: Avilez or some variation, but not in ALL CAPS, which denotes either a corporate entity or a trust/estate in certain legal context(s).

43.　　　Plaintiff is asserting he is not that entity. The State has not proven that Plaintiff is "one and the same" as that fictional "entity", Thus the real property in interest Plaintiff was never properly before the court, whereas the named defendant (corporate fiction) is an improper party.

44.　　　This is failure to join an indispensable party under compulsory joinder rules ie FRCP Rule 19 or New York equivalent CPLR section 1001. Proceeding without a real party violates due process and renders the case ultra vires. The charges should be dismissed on this ground as well.

## CAUSES OF ACTION

### Count 1 – 42 U.S.C. § 1983 Fourth Amendment Violations

45.　　　The narrative of events reveals numerous violations of Avilez's rights under the United States Constitution and the New York State Constitution.

46.　　　The allegations in paragraphs 1 through 44 are restated and incorporated as though fully set forth herein

47.　　　The defendants acted under color of state law while performing the acts described herein.

---

[19] Courts are constituted by authority, and they cannot go beyond that power delegated to them. If they act beyond that authority, and certainly in contravention of it, their judgements and orders are regarded as nullities; they are not voidable, but simply void, and this even prior to reversal. Williamson v Berry, 8 HOW, 945, 540, 12 L.Ed 1170, 1189 (1850) Also: A court cannot confer jurisdiction where none existed and cannot make a void proceeding valid. It is clear and well-established law that a void order can be challenged in any court. Old Wayne Mut. L. Assoc. v Mcdonough, 204 U.S. 8 27 S.Ct. 236 (1907)

48.     The defendants deprived the plaintiff of his Fourth and Fourteenth Amendment rights through the actions described herein.

49.     The defendants seized Avilez without legal & lawful basis.

50.     The defendants used excessive force including, but not limited to, the brandishing of weapons and use of handcuffs on Avilez.

51.     The defendants conducted an unjustified arrest of Avilez.

52.     In addition, Defendant Kanbur *a sergeant* knew he had no probable cause to stop, detain arrest and imprison, or use any force against Avilez, yet he failed or refused to cease the unlawful seizure and detainment.

53.     The defendants' action violated constitutional rights that were clearly established on October 12, 2024.

54.     As direct and proximate result of the acts of the defendants, the plaintiff suffered injuries and other harms that entitle him to damages.

55.     The defendants acted with evil intent or reckless indifference to Avilez's rights.

56.     The defendants subjected Avilez to these deprivations of rights in such a manner as to render the defendants liable for punitive damages, which are necessary to deter further improper conduct.

57.     Avilez is entitled to fully recover his costs, including reasonable attorneys' fees, under 42 U.S.C. § 1988. **Count 2 - Fourth Amendment violation (& New York State Constitution Article 1, Section 12):**

58.     The allegations in paragraphs 1 through 44 are restated and incorporated as though fully set forth herein.

59.     At all times material, the defendants were law enforcement officers acting under color of state law.

60.     New York Law protects a person from unlawful restraint of a person against his will, the gist of which action is the unlawful detention of the plaintiff and deprivation of his liberty.

61.     The initial stop of Avilez's automobile was an unreasonable seizure lacking (RS) reasonable suspicion or (PC) probable cause. The arrest of Avilez without probable cause (crossing a double yellow line to go around an idol car impeding traffic at a green light is not grounds for probable cause) was an unreasonable and unlawful seizure of his person, freedom and liberty.

62.     The continued detention and exposed conditions were unreasonable. The unlawful taking of his fingerprints and picture which are his biometric property were also unreasonable and unlawful. Each of these infringements triggers the Fourth Amendment's protection, made applicable to the State via the Fourteenth Amendment.

63.     New York State Constitution Article 1 §12, provides even broader protection, requiring "authority of law" [typically a warrant] for searches and seizures. **The exclusionary rule** bars any evidence obtained through these unconstitutional acts, and the proper remedy is dismissal if critical evidence or jurisdiction was gained thereby. Moreover under § 1983, Plaintiff can sue officers[20] for illegal search and seizure. The precedent of Delaware v Prouse clearly established by 1979 that random license checks are unlawful, the officers have no qualified immunity for such a clear violation.

64.     The defendants unlawfully detained Avilez and deprived him of his liberty.

65.     The defendants unlawfully detained Avilez against his will.

---

[20] "No court or officer can acquire jurisdiction by the mere assertion of it or by falsely alleging the existence of facts on which jurisdiction depends.... No officer can acquire jurisdiction by deciding that he has it. In all such cases, every officer whether judicial of ministerial, decides at his peril" Middleton v. Low Cassels, 5 Hill (N.Y.) 164, 168 (1843); Prosser v. Secor, 5 Barb, (N.Y.) 607 608 (1849)

66.     The defendants detained Avilez without legal authority or "color of authority"

67.     The defendants arrested & detained Avilez without legal basis.

68.     The detention of Avilez was unreasonable and unwarranted under the circumstances.

69.     The defendants acted with ill will, hatred, spite and evil intent to arrest Avilez without a warrant or (PC) probable cause, & while ignoring multiple constitutional rights violations by their actions. *"Ignorantia juris non excusat"*

70.     The damages include but are not limited to: violation of Plaintiff's federally protected rights under the constitution, a deprivation of liberty, humiliation, physical inconvenience, pain and suffering, physical injury, emotional damage, mental suffering and anguish, and all other damages associated with this violation.

71.     As a direct and proximate result of the acts of the defendants, the plaintiff suffered injuries and other harms that entitle him to damages in amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, the plaintiff prays for judgement as follows:

1.     For money damages, including compensatory and punitive damages, against the defendants jointly and severally in an amount to be determined as trial; Trezvant v. City of Tampa 241 F.2d 336 (11th Cir. 1984)

2.     Prejudgment interest, costs, and attorney's fees; and

3.     For such other and further relief as the Court deems just and equitable.

4.     Dismissal of criminal charges made against Plaintiff with prejudice and removal of biometric property unlawfully taken from plaintiff removed from NYPD database.

## COMMON LAW TORTS

Independently of the constitutional claims, the actions of the officers give rise to classic common law causes of action:

- **False Imprisonment**: The unlawful arrest and jailing of Plaintiff constitute *damaging* false imprisonment[21] Under New York Law false imprisonment occurs when a person is detained without legal authority or jurisdiction. The arrest through traveling (not driving[22]) without a license was not lawfully justified thus from the moment of arrest to the release, Plaintiff was falsely imprisoned. State of New York, 67th precinct can be liable for this tort as well as the individual officers Kanbur and Balkissoon, Damages can include the loss of liberty and fine that was paid upon release. Etc.

- **Assault and Battery**: The touching and grabbing of Plaintiff during the unlawful arrest handcuffing and the confinement protested conditions can be deemed battery (harmful/offensive contact) and assault (apprehension of non-consented contact) officers have a privilege to use reasonable force in a lawful arrest, but here the arrest was unlawful hence no privilege. The way Plaintiff was handled in jail shackled to 7-8 men in a holding cell for hours, no bathroom and being exposed to other men screaming and laying in their own urine due to jailers not caring to aid in the man's request to use the bathroom. Enduring the smell, cigarette smoking and cold conditions of the cell could be construed as a form of battery ordinarily causing harmful contact through environmental manipulation. Also, shiny bright lights and absolutely no clock in any of the cell areas can be seen as a form of assault on the sense and manipulation of time. These cases provide damages for physical and mental suffering.

- **Intentional Infliction of Emotional Distress (IIED) / Outrage**: New York recognizes the tort of outrage for extreme and outrageous conduct done intentionally or recklessly that causes severe and

---

[21] "Where an individual is detained, without a warrant and without having committed a crime (traffic infractions are not crimes), the detention is a false arrest and false imprisonment." Damages awarded: Tresvant v. City of Tampa, 241 F2d. 336 (11th CIR 198.) Motorist illegally held for 23 minutes in a traffic stop was awarded $25,000 in damages. The case sets the foundation for $75,000 per hour, or $1,800,000 dollars per day.

[22] Driver: defined as one **employed** in the operation of a vehicle **for hire** also see federal definition of Driver 19 U.S.C § 4571(6) driver means a person that drives a **commercial** motor vehicle....

damaging emotional distress. The officers conduct, threatening and inflicting torment to force to be Identified unlawfully through finger printing and picture taken is textbook outrageous conduct. It is outrageous and utterly intolerable in a civilized community with respect to the rights of the people and positive laws. The conduct of the magistrate in ignoring basic rights might not traditionally fall under IIED because it's more of a local process, but through manipulation and helplessness unfiltered could contribute to emotional distress. Court judges are usually immune to tort as well. At least the actions of "law enforcement" stands for an IIED claim. Plaintiff certainly experienced stress (mental and emotional) the narrative shows exhaustion (I did not sleep through the ordeal) and presumably fear for his safety in custody.

- **Abuse of Process / Malicious Prosecution:** The adding of the additional statutory charges void of contract with the state via a valid license[23] , the general handling of the prosecution could be seen as malicious prosecution[24]. For malicious prosecution one needs the criminal case to terminate in favor of the accused first; when it does (hopefully through lawful dismissal for lack of jurisdiction) Plaintiff can assert he was arrested and detained without probable cause and with malice. The facts strongly suggest malice or at least gross indifference to Plaintiff's rights, the case and 24hr incarceration continued solely to teach the Plaintiff a lesson for not consenting to the "perceived" authority not because of a legitimate public offense. The absence of process occurs when legal process (like a bench warrant) is used for an ulterior purpose.

- **Coercion and Extortion:** New York may not have a civil tort named "coercion" but the conduct is criminal coercion and extortion. Extortion is the practice of obtaining something (Identity, Biometric data, fingerprints, compliance, fines etc.) through coercion [though usually extortion is for property

---

[23] The definition of a licensee is one who holds a current valid license. Only a licensee can violate a statute. A suspended license is not valid and therefore not subject to statutes
[24] "The prosecutor may file false charges without doing an investigation" Jones v. Shankland 9th cir fed court of appeals

or money) here Plaintiff's property [biometric data and infringement of rights. While one cannot directly sue for a crime, the facts overlap with IIED on false imprisonment. (The threat of continued confinement was the wrongful and unlawful act of obtaining something and in most jurisdictions, it constitutes a criminal offense)

- **Fraud /Constructive Fraud on the Court:** The State's evidence might even be framed as a fraud on the court as they silently allowed the court to proceed as if jurisdiction existed[25]. Also, the failure to disclose the name of the "person" that the State was charging (if one views the State as knowing that it's charging a legal action and tricking the man into appearing for it) could be seen as a form of fraud, this is more extreme and likely wouldn't be a standalone tort claim. But it underscores the inequitable conduct here. Given these torts, Plaintiff can pursue action in New York courts against the County (for the acts of its officers, sheriffs and deputies) and potentially against the State (for the magistrate's actions and involvement although the State is usually immune from its judicial acts, but if through ultra vires, maybe not. Under the New York Court of Claims Act (the "Act") broadly waives the State's sovereign immunity for tort claims, provided the claims are brought in the Court of Claims. This waiver of immunity for torts is subject to procedural prerequisites and substantive defenses. Coercion to plea without a *verified criminal complaint.* There may also be a cause under New York State Constitution directly for damages [ New York Supreme Court hasn't clearly recognized a private right of action for state constitutional[26] violations except some cases like an illegal search and seizure can sometimes be remedied by a claimant to §1983 under state law. Regardless, the path of §1983 in federal court is often cleaner for constitutional issues.

---

[25] A judgement obtained without jurisdiction over the defendant is void. Overby v. Overby, 457 S.W.2d 851(Tenn. 1970), Volume 20: Corpus Juris, Sec § 1785. Also: "In regards to courts of inferior jurisdiction, "If the record does not show upon its face the facts necessary to give jurisdiction, they will be presumed to not have existed". Norman v. Zieber, 3 Or at 202-03

[26] New York Constitution Article 1, section 12: The right of the people to be secure in their person, houses papers and effects against unreasonable search and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by Oath of affirmation, and particularly describing the place to be searched, and the persons or things to be seized. Also see Fifth Amendment of the United States Constitution.

"The Constitution and the laws pursuant thereof and the treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the judges in every State shall be bound thereby. Anything in conflict or repugnancy is null and void or law. It bears no power to enforce, no obligation to obey. Purports to settle as if it never existed. Unconstitutionality dates from the enactment. No courts are bound to uphold it, no citizen are bound to obey it." [Article 6 paragraph 2: Supremacy Clause]

"That a constitution should receive a literal interpretation in favor of the Citizen, is especially true, with respect to those provisions which were designed to safeguard the liberty and security of the Citizen in regard to person and property" [16Am Jur 2d: 16Am Jurisprudence 2d., Sec 97; Bary v. United States – 273 US 128]

## JURY DEMAND

Plaintiff demands a trial by jury on all issues triable pursuant to Rule 38 of the Federal Rules of Civil Procedure.

`*Consent makes the Law.*" *Equity Maxim.*

Dated: May 28, 2025

Respectfully submitted.

By: Curtis: Avilez, *In-propria persona*,
Sui Juris, Living Man, All Rights Reserved